Cite as 2025 Ark. App. 31

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-24-44

| | | |
|---|---|---|
| DEMEONTA BARLOW | | |
| | APPELLANT | Opinion Delivered January 22, 2025 |
| V. | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-21-598] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE KARA A. PETRO, JUDGE |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

The Garland County Circuit Court revoked appellant Demeonta Barlow's suspended imposition of sentence (SIS) and sentenced him to ten years' imprisonment. On appeal, Barlow challenges the sufficiency of the evidence supporting the revocation. We affirm.

On March 29, 2022, Barlow pleaded guilty to committing a terroristic act for shooting at someone from his car, a Class B felony, in Garland County case number 26CR-21-598. The circuit court imposed a sentence of four years' imprisonment with an additional two years' suspended sentence. The first condition of Barlow's suspended sentence was that he not commit a criminal offense punishable by imprisonment.

On February 27, 2023, the State filed a petition to revoke Barlow's suspended sentence because he was arrested and charged with the new crime of being a felon in

possession of a firearm on December 21, 2022. A revocation hearing was held September 19, 2023.

At the hearing, Barlow's parole officer, Blake Morris, testified he had supervised Barlow's parole since August 2022. He explained that at the initial meeting, he went over the conditions of parole with Barlow to ensure Barlow understood the terms. At that meeting, Barlow provided his address as 232 South Patterson in Hot Springs. Morris recalled that on the morning of December 21, 2022, Barlow met with him for a parole appointment, and then Barlow went to work. Morris subsequently was contacted by Detective Plummer with the Hot Springs Police Department who showed him a video from Barlow's Instagram account of Barlow holding two guns. Morris testified that on the basis of the information from Plummer, he went to Barlow's work and picked him up to conduct a home visit. On the way to Barlow's address at 232 South Patterson, Morris asked Barlow if anyone else lived in the home. Barlow responded that his aunt, Swanzettua Blanchard, was the only other person who lived at the address.

During his testimony, Morris recalled that upon arriving at the residence, no one appeared to be home. Morris called Blanchard to let him in, and she arrived shortly after to let him in the house to conduct a search. Just before going inside, Morris confirmed he was at Barlow's address by asking Barlow to point to the window of his bedroom. Barlow pointed at a window. Morris testified that, upon entering the house, he saw two young men sitting on the couch who were later identified as Devin Williams and Cayden Hariston. Morris said Blanchard pointed out Barlow's room, which corresponded with the window to which

Barlow had earlier pointed. Inside the bedroom, Morris located a shoebox on the headboard of the bed that contained a firearm identified as a Zigana 9mm pistol. At this point, Barlow was still outside in the care of another parole officer. Morris testified he next contacted Detective Plummer.

Upon being notified by Morris, Plummer responded to the scene. Plummer testified that after clearing out and preserving the inside of the residence, one of his colleagues prepared a search warrant for the house, and then other officers transported Barlow to the police department for an interview. Plummer testified that during the search of the full premises, he also located a 12-gauge shotgun and a Kel-Tec sub 2000 9mm rifle in other areas of the house. Additionally, Plummer recovered a revolver that initially appeared real but was later determined to be fake. Plummer could not say with certainty the guns found were the same guns as those in the Instagram video.

Plummer testified that, initially, Blanchard told him the Zigana pistol found in Barlow's room was hers, but then Williams claimed his friend had given it to him. Williams left to get his friend, Arius Adams, who supposedly gave him the Zigana firearm. Plummer said he spoke with Adams, who told Plummer where the firearm was purchased. Adams told Plummer that he had given the firearm to Williams. Adams did not live at 232 South Patterson.

Blanchard testified for the defense. She testified she lived at 232 South Patterson and that her son, Williams, resided with her part time. Williams attended school elsewhere but would come home on weekends and holidays. On the day of the search, Williams was home

3

for Christmas break. Hariston lived with Blanchard full time. Blanchard testified that at the time of the search, Barlow was living with Blanchard's aunt on Terry Street. Blanchard claimed possession of the 12-gauge shotgun and the Kel-Tec rifle found in her bedroom. Blanchard was not familiar with the Zigana pistol found by Morris and was unaware it was in her house until Morris located it. She testified that she initially claimed the Zigana as hers because she believed it could be Williams, and she did not want him getting in trouble for it.

Adams testified that his dad purchased the Zigana and that approximately one week before Morris discovered the gun, Adams had left it at the residence. Adams said he had never seen Barlow at the residence.

Eric Adams testified he is Arius Adams's father, he is the owner of the Zigana handgun, he had purchased the gun in 2021, and he was unaware that Arius had taken the gun from his house. Adams stated he does not know Barlow and never sold or gave the gun to him.

Barlow testified that his address was 232 South Patterson. However, he told the court that when the pistol was found in his bedroom at that address, he was living at the Terry Street address. He testified that he lived at 232 South Patterson "for like four days" after he was paroled. Barlow testified that he thought he notified Morris he was no longer living at 232 South Patterson but admitted that it was possible he forgot to. Barlow admitted that, on the day Morris conducted the home visit at 232 South Patterson, he never told Morris he was not living there. He testified that the Instagram video depicting him holding two guns

4

that was discovered during Plummer's investigation was either from a "fake" account or was taken out of context from a mix of two different videos.

The court found that Barlow had violated condition 1 of his suspended sentence by committing the new crime of being a felon in possession of a firearm. The court noted Blanchard's lack of credibility due to her admissions that she lied to police about her ownership of the gun and that Barlow lived in her home. The court also noted Barlow's lack of credibility by maintaining that he lived at 232 South Patterson and claiming the Terry Street address only after the gun was found in his room. The court found that the Instagram video of Barlow holding guns corroborated the evidence that he possessed the pistol found in his room. Finally, the court noted that the shoebox the pistol was found in was in "plain sight" on the headboard of Barlow's bed. The court sentenced Barlow to a term of ten years' imprisonment.

Barlow now appeals, arguing that there was insufficient evidence that he possessed a firearm. Specifically, he contends that the firearm was found in a jointly occupied premises, and the necessary additional factors linking him to the firearm are lacking.

To revoke probation or an SIS, the burden is on the State to prove the violation of a condition of the probation or SIS by a preponderance of the evidence. *Jones v. State*, 355 Ark. 630, 144 S.W.3d 254 (2004). Because the burden of proof is by a preponderance of the evidence rather than beyond a reasonable doubt, evidence that is insufficient to support a criminal conviction may be sufficient to support a revocation. *Id.* Circumstantial evidence

5

may be sufficient to warrant revocation. *Passmore v. State*, 2024 Ark. App. 425, 698 S.W.3d 400.

The supreme court has consistently held that possession of contraband may be proved by constructive possession, which is the control or right to control the contraband; thus, it is not necessary for the State to prove actual possession of the contraband. *Jones*, 355 Ark. 630, 144 S.W.3d 254. To prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband. *Id.* Constructive possession may be inferred when the contraband is in the joint control of the defendant and another person. *Burgess v. State*, 2021 Ark. App. 54. Joint occupancy alone, however, is not sufficient to establish possession or joint possession; there must be some additional factor linking the accused to the contraband. *Id.* A defendant's control over, and knowledge of, the contraband can be inferred from the circumstances, which includes whether the contraband was found in plain view. *Id.*

The undisputed evidence showed that Barlow told Morris his address was 232 South Patterson and never told him otherwise, even when Morris picked him up to conduct a home visit at that address. Barlow told Morris that he and Blanchard were the only people who lived at that address. Barlow even pointed out his bedroom window for Morris. Blanchard affirmed that Barlow lived in the room he pointed out and led Morris to it.  Morris found a pistol in a shoebox sitting in plain sight on the headboard of Barlow's bed. Moreover, there was testimony that Barlow's Instagram account showed him holding two firearms.  Although Barlow denied possessing the pistol and presented testimony that he had no knowledge of

the pistol, the circuit court clearly did not find his testimony credible. *See Palmer v. State*, 2023 Ark. App. 178, at 6, 663 S.W.3d 436, 440 (SIS revoked, in part, because officers found a firearm in plain view in the bedroom that the roommate said belonged to appellant).

Applying these principles, we hold that the circuit court did not err in finding that Barlow constructively possessed the firearm and thus violated a condition of his probation.

Affirmed.

BARRETT and HIXSON, JJ., agree.

*The Lane Firm*, by: *Jonathan T. Lane*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.